KIRTON McCONKIE
Darryl J. Lee, #4955
Brinton M. Wilkins, #10713
50 East South Temple
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 212-2151

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALPENTAL ENERGY PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RCM INTERNATIONAL, LLC,<br><br>Defendant. | *MOTION TO DISMISS OR ABSTAIN AND SUPPORTING MEMORANDUM*<br><br>Civil No. 2:12-cv-01060-EJF<br><br>Magistrate Judge Evelyn J. Furse |

## MOTION TO DISMISS OR ABSTAIN

Defendant, RCM International, LLC ("RCM"), by and through its attorneys of record herein, hereby moves this Court under Rule 12(b) of the Federal Rules of Civil Procedure and the abstention doctrines set forth by the United States Supreme Court in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800 (1976), to dismiss the present litigation or stay further proceedings until resolution of earlier-filed and currently pending litigation in the California state court between the same parties involving substantially related factual disputes and claims. For the reasons set forth

below, this Court should abstain in this matter to prevent duplicative litigation and possible inconsistent rulings, as well as preserve the resources of the parties and of the courts.[1]

**INTRODUCTION**

The current dispute between the parties arises from a relationship based upon a confidentiality agreement governed by the laws and subject to the jurisdiction of the State of California (the "Confidentiality Agreement"). Following execution of that agreement, RCM shared its highly confidential and proprietary information and technology with Plaintiff Alpental Energy Partners, LLC ("Alpental"). In further reliance upon that Confidentiality Agreement, RCM executed a "Masters Services Agreement" (the "MSA") with Alpental and provided detailed design information for the development of certain projects in Utah. Almost immediately after obtaining sufficient information from RCM to be able to implement the RCM Technology without further RCM involvement, Alpental began secretly to develop, share, and market that technology both within and without Utah. It did so while first presenting unfounded complaints to RCM regarding its performance, refusing to pay to RCM moneys owed for that performance, and declaring the MSA terminated. It then offered to "resolve" the matter by paying RCM what it was owed, but only if RCM waived all of its proprietary rights and claims to the technology it had shared with Alpental under the protections of the Confidentiality Agreement.

Upon subsequently learning that Alpental had shared proprietary RCM drawings and data with entities within and without Utah, that Alpental had used the RCM proprietary drawings and

---

[1] RCM recognizes that this matter is before this Court as a result of removal by RCM pursuant to 28 U.S.C. § 1441, within the time constraints of 28 U.S.C. § 1446. It has thus presented its motion as one for abstention under federal law, principally on the basis of numerous considerations of comity, judicial efficiency, and fairness. RCM notes that its arguments under Utah state procedural law would have been similar. *See*, *e.g., Trillium USA, Inc. v. Bd. Of County Comm'rs,* 37 P.3d 1093, 1097-98 (Utah 2001).

data to initiate construction of a multimillion dollar project in Utah, and that Alpental was marketing RCM's technology in various locations, including outside of the United States, RCM filed a lawsuit on June 23, 2012, in the Superior Court of the State of California in and for Alameda County (the "California Lawsuit") on the basis of, *inter alia*, breach of the Confidentiality Agreement, fraud, and theft of RCM's trade secrets. In an effort to avoid the jurisdiction of the California courts, to which it had agreed when it had executed the Confidentiality Agreement, Alpental filed the present litigation in Utah state court. It did not provide notice of that litigation to RCM until after it filed a motion to dismiss the California Lawsuit, in which it attempted to rely upon its Utah filing as the primary reason for such dismissal. The California court rejected Alpental's arguments and denied its motion, invited Alpental to file its counterclaims in the California Lawsuit, and established an initial litigation schedule.

Alpental has emphatically insisted that both the present litigation and the California Lawsuit stem from the same set of facts and pertain to the same transaction. RCM agrees, insofar as the ill-defined claims that Alpental has raised in the present matter before this Court involve a subset of the much broader issues and claims that RCM has raised in the California Lawsuit. Resolution of those broader issues will necessarily involve resolution of most if not all of the specific issues that would be raised in this litigation, including the adequacy of performance of RCM and, conversely, Alpental's bad faith assertion of inadequate performance under the MSA as a guise for its secret taking and exploitation of RCM's technology. As discussed further in this memorandum, the posture, timing, and substance of the two lawsuits (neither of which involves questions of federal law) justify dismissing or staying the present lawsuit to allow the earlier-filed California Lawsuit to resolve most if not all of the issues

underlying this matter. Failure to do so raises the very real possibility, if not certainty, of needlessly multiplying litigation, increasing costs, interfering with another jurisdiction's ongoing proceedings, and wasting judicial resources.

**FACTUAL BACKGROUND**

RCM is a California company with its only offices located in Oakland, California. *See* Declaration of Mark Moser, attached hereto as Exhibit A, at ¶ 3. It designs and constructs anaerobic digesters that use bacteria to break down organic waste to produce usable methane. *Id*. RCM's sole owner is Mark Moser, who has spent more than 30 years in the industry, and who, through his company, has designed and built digesters in Japan, Korea, Chile, Ecuador, and Mexico, together with nearly half of all the digesters operating in the United States. *Id*. at ¶ 4.

RCM has a longtime business relationship with Smithfield Foods, Inc. ("Smithfield"). *Id*. at ¶ 5. In April 2009, Smithfield's livestock production subsidiary, Murphy Brown, LLC ("Murphy Brown"), announced that it was looking for an entity to finance and operate methane capture projects around the United States. *Id*. at ¶ 6. Alpental approached RCM about working with it to develop projects for Murphy Brown. *Id*. at ¶ 7. The Smithfield or Murphy Brown projects that RCM discussed developing together with Alpental were located in Utah, North Carolina, and Missouri. *Id*. at ¶ 8. Alpental and RCM also discussed developing other projects in California, New York, and Pennsylvania. *Id*. at ¶ 9.

RCM zealously protects its proprietary technology as trade secrets. Thus, in December 2009 and prior to RCM sharing its confidential data and design information, RCM and Alpental executed a Confidentiality Agreement (the "Confidentiality Agreement"). *Id*. at ¶ 10. The Confidentiality Agreement is attached hereto as Exhibit F. The Confidentiality Agreement

protects all contracts, business, technology, designs and other proprietary information of RCM, including, but not limited to, design, pricing, equipment, and specifications. Ex. A at ¶ 11, Ex. F. The Confidentiality Agreement is controlled by California law and establishes the courts of Alameda County, California, as the proper venue for dealing with "any matter" arising in connection with the disclosure of RCM's proprietary information. Ex. A at ¶ 12, Ex. F.

In November 2010, RCM and Alpental executed a second agreement, the Master Services Agreement (the "MSA"), to address the parties' relationship with respect to specific projects that RCM understood Alpental intended to develop with it. Ex. A at ¶ 13. The MSA provided that the venue for project-specific issues would be in the state where that particular project was located. *Id*. at ¶ 14. The MSA did not integrate the Confidentiality Agreement into the MSA, but instead specifically referred to and reaffirmed the continuing validity of the Confidentiality Agreement as the agreement governing the parties' relationship with respect to RCM's proprietary information. *Id.* at ¶ 15.

Following execution of the MSA, and in further reliance upon the Confidentiality Agreement, RCM developed from its California offices specific design parameters and engineering drawings for a Utah project. *Id*. at ¶ 16. Also in reliance on the Confidentiality Agreement, RCM shared valuable information with Alpental's representatives who made repeated trips to RCM's offices in California to collect a wide range of proprietary design data and business information critical to the design of anaerobic digesters and the development and exploitation of the digester market. *Id*. at ¶ 17.

Almost immediately upon securing from RCM the "Basis of Design Document," perhaps the most critical compilation of design data for a digester project, Alpental inexplicably, and for the first time, began criticizing RCM's performance under the MSA. *Id*. at ¶ 18. Repeated

RCM attempts to address those complaints were rebuffed and new complaints were concocted. *Id*. at ¶ 19. Alpental also failed to make payments on RCM invoices. *Id*. at ¶ 20.

On May 16, 2011, Alpental informed RCM that it considered the MSA terminated according to its terms. *Id*. at ¶ 21. It subsequently offered to "resolve" the matter and to pay RCM what Alpental owed to it if RCM would waive all of its rights under the Confidentiality Agreement. RCM declined. *Id*. at ¶ 22.

Shortly thereafter, RCM learned that Alpental was disclosing RCM's confidential information to contractors, sub-contractors, vendors, suppliers, and consultants. *Id*. at ¶ 23. RCM further learned that Alpental was entering into agreements with third parties to construct digesters using RCM's confidential information, and that Alpental had, in fact, constructed the multimillion dollar project in Utah using RCM's confidential information. *Id*. at ¶ 24. It also learned that Alpental was marketing RCM technology as far away as Australia. *Id*. at ¶ 25.

On July 23, 2012, RCM filed the California Lawsuit in California Superior Court in Alameda County. A true and correct copy of the complaint filed in the California Lawsuit is attached hereto as Exhibit B. The California Lawsuit alleges, among other things, that Alpental breached the Confidentiality Agreement, committed fraud, and violated California's Uniform Trade Secret Act, and it seeks damages and a permanent injunction against further misuse of RCM's proprietary technology by Alpental. *See* Ex. B.

Two months after RCM initiated the California Lawsuit, Alpental filed the present lawsuit in Utah, seeking, among other things, declaratory relief and vaguely alleging, *inter alia,* that RCM failed to provide "the work product required by the MSA" and "the technical expertise" RCM possessed. Complaint at ¶ 38. This "expertise" and "work product" can only be the expertise and work product that, RCM alleges in the currently ongoing Californian Lawsuit,

Alpental took, shared, developed and marketed to third parties in violation of the Confidentiality Agreement.

Alpental has vigorously argued in the California proceedings that the events relevant to its claims under the MSA and to RCM's claims under the Confidentiality Agreement are integrally related. In arguing its unsuccessful motion to the California court to dismiss or stay the California Lawsuit, Alpental confirmed its understanding that the parties' activities in connection with the MSA cannot be considered separately from their broader understanding and commitments under the Confidentiality Agreement. Among other things, it argued:

1. "All four causes of action [asserted by RCM in the California Lawsuit] arise from two integrally related contracts between RCM and Alpental." Alpental Energy Partners, LLC's Notice of Motion and Motion to Dismiss First Amended Complaint for Forum Non Conveniens or Alternatively to Stay Case; Memorandum of Points and Authorities in Support Thereof, a true and correct copy of which is attached as Exhibit C, at 7.
2. "Both contracts must be construed together." *Id*.
3. "As it stands now, the dispute between Alpental and RCM will be litigated in two different, distant fora, even though they arise from the same nucleus of facts and, in fact, share numerous common facts. . . ." *Id*. at 10.
4. "The Confidentiality Agreement and the MSA reflect the same parties, relate to the same matter, and are made as parts of substantially one transaction." *Id*. at 12.
5. "In other words, the Confidentiality Agreement and MSA pertain to a single transaction." Alpental Energy Partners, LLC's Reply Memorandum of Points and Authorities in Support of its Motion to Dismiss First Amended Complaint, for Forum Non Conveniens, or Alternatively to Stay Case, a true and correct copy of which is attached as Exhibit D, at 5.
6. "[The MSA] was the culmination of the parties' understanding and the very purpose for the Confidentiality Agreement in the first place." *Id*. at 6.

Alpental did not serve its complaint on RCM in this matter until November 9, 2012, well after filing the above referenced motion. This was just three days before the scheduled oral argument in the California action on Alpental's motion to dismiss, and more than two months after it was filed. *See* Ex. A at ¶ 27.

4847-2570-2930.2

The California court denied Alpental's motion to dismiss the California Lawsuit, ruling that the California court was the proper venue to resolve the disputes between the parties under the Confidentiality Agreement. A true and correct copy of the California court's written decision is attached as Exhibit E. In his verbal explanation from the bench concerning his ruling on this motion, Judge Lawrence John Appel invited Alpental to assert in the California Lawsuit whatever claims it had against RCM. *See* Ex. A at ¶ 28.

# ARGUMENT

The unique facts of the dispute between RCM and Alpental weigh in favor of this Court abstaining from exercising its jurisdiction pending the outcome of the California Lawsuit. Although, generally, the pendency of an action in a state court is not necessarily a bar to proceedings concerning the same matter in a federal district court, see *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the U.S. Supreme Court has recognized that a district court can abstain from exercising its jurisdiction where doing so "would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 814, *quoting Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959). Under the facts of this case, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,'" constitute such an important countervailing interest calling for the Court to stay further proceedings. *See Colorado River*. 424 U.S. at 817.

**I. ABSTENTION IS PARTICULARLY APPROPRIATE WHEN, AS HERE, THE FEDERAL ACTION INVOLVES A REQUEST FOR DECLARATORY RELIEF INVOLVING THE SAME ISSUE ALREADY PRESENTED IN THE STATE ACTION.**

The U.S. Supreme Court has discussed the considerations that a federal district court should entertain when asked to abstain from deciding an action that seeks declaratory relief and that involves the same parties as those in a state court lawsuit presenting similar issues.[2] *See*

---

[2] The Tenth Circuit stated in dicta that "[i]f the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit," *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1181-1182 (10th Cir. 2002). The Tenth Circuit has not stated, however, that the ***only*** way to assert a claim for declaratory relief for purposes of *Brillhart* is to file a lawsuit only seeking a declaration of rights.

The circuits are split on this question *See*, *e.g.*, *ITT Indus., Inc. v. Pac. Employers Ins. Co.*, 427 F.Supp.3d 552, 555-556 (E.D. Pa. 2006) (if the coercive claims hinge upon the declaratory judgment claim the action is for declaratory relief); *Royal Indem. Co. v. Apex Oil*

1

Brillhart *v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). In making this decision, a district court must consider, among other things, "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state] proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id*. at 495. As the Court observed:

> Ordinarily it would be uneconomical, as well as vexatious, for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* at 495.

The present lawsuit presents just such a situation that the Supreme Court instructed should be avoided. That is, it involves the same parties involved in the California Lawsuit, neither of which has presented a question of federal law. Furthermore, the claims that Alpental seeks to have adjudicated by this Court can be fully and fairly decided in the California Lawsuit, as demonstrated by the fact that the California court has invited Alpental to file its counterclaims in that action. *Cf. Brillhart,* 391 U.S. at 495-96 (remanding because, in part, the District Court did not, before dismissing the federal action, determine whether respondent's claims could be adequately adjudicated by the state court).

---

*Co*., 511 F.3d 788, 793-794 (8th Cir. 2008) (a lawsuit asserting multiple claims is a declaratory judgment action if any damages are contingent upon the declaratory judgment claim); *and United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 492-494 (4th Cir. 1998) (if the action involves a declaratory judgment claim, it is a declaratory judgment action).

This Court should follow the Fourth Circuit position set forth in *Kapiloff* – i.e., that a lawsuit including a declaratory judgment claim is a declaratory judgment action. This position provides certainty and enables all involved to proceed as economically as possible – which is one of *Brillhart*'s underlying concerns – toward a substantive resolution.

Equally significant is that Alpental in the present action asks this Court to declare that all issues now before the California court must be heard in this Court. *See* Complaint, ¶ 54. Such an order would directly contradict the recent holding of the California court, which denied Alpental's motion to dismiss that action and ruled that it would maintain jurisdiction over RCM's claims relating to the Confidentiality Agreement, Alpental's fraud, and its alleged theft of RCM's trade secrets. *See* Ex. E. For this Court to now declare that the California cannot hear those claims would create unwarranted conflict and be a remarkable lack of deference to the judgment, jurisdiction, and autonomy of the California courts.

## II. THIS COURT ALSO SHOULD ABSTAIN ON THE BASIS OF "CONSIDERATIONS OF 'WISE JUDICIAL ADMINISTRATION, GIVING REGARD TO CONSERVATION OF JUDICIAL RESOURCES AND COMPREHENSIVE DISPOSITION OF LITIGATION."

This Court also should abstain from exercising its jurisdiction in accordance with the abstention doctrine set forth in *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976). According to *Colorado River*, "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdiction," and which may justify a court in refusing to exercise its otherwise properly invoked jurisdiction. *Id*. at 817. Those principles "rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id*., *quoting Kerotest Mfg. Co.*, 342 U.S. at 183.

### A. The State And Federal Proceedings Are Parallel.

As explained by the U.S. Court of Appeals for the Tenth Circuit, the first step in *Colorado River* abstention analysis is determining if the federal and state cases are "parallel."

*Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.*, *quoting New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). In assessing whether the suits are parallel, the court must "examine the state proceedings as they ***actually exist*** to determine whether they are parallel to the federal proceedings." *Fox*, 16 F.3d at 1081 (emphasis in original).

The present lawsuit and the California Lawsuit certainly are parallel proceedings. Alpental itself has plainly and extensively argued to the California court that the present litigation and the California Lawsuit are based upon the same set of facts and relate to the same transactions between the parties. *See* Exhibit C at 8-11; Exh. D at 5-8. Alpental's claims in the present matter involve a subset of the broader issues and claims that RCM has raised in the California Lawsuit, and resolution of those broader issues in the California action will necessarily address and resolve the key underlying issues that would control this litigation. Most importantly, as discussed above, the California Lawsuit will necessarily include a determination of whether Alpental's assertion of inadequate performance by RCM, which is its fundamental claim in the present litigation, was merely a device to further its scheme to unlawfully take and exploit RCM's technology.

> **B.** **Virtually All Relevant Factors Indicate That The Court Should Exercise *Colorado River* Abstention.**

Once a court has determined that the two proceedings are parallel, it should look to several factors to determine if the circumstances justify *Colorado River* abstention. These factors include: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the

4

order in which jurisdiction was obtained by the concurrent forums; (5) the vexatious or reactive nature of either the federal or the state action; (6) whether federal law provides the rule of decision; (7) the adequacy of the state court action to protect the federal plaintiff's rights; and (8) "whether the party opposing abstention has engaged in impermissible forum shopping." *Id*. at 1082. *See also Colorado River*, 424 U.S. at 818; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 18-28 (1983). Trial courts are not to apply these considerations mechanically, but in light "of the important factors as they apply in a given case. . . ." *Moses H. Cone*, 460 U.S. at 16. The weight to be given to any one factor depends upon the particular setting of the case. *Id*.

In this case, the factors that the Tenth Circuit identified for consideration when deciding to invoke *Colorado River* abstention weigh heavily in favor of this Court abstaining from further action pending the California Lawsuit's resolution.

> 1. <u>This Court should abstain because the California court has assumed jurisdiction over the intellectual property of RCM at issue in this matter</u>.

Neither court has assumed jurisdiction over any *real* property associated with either party. The California court, however, has assumed jurisdiction over the *intellectual* property of RCM in the form of its trade secrets and other proprietary information.[3]

> 2. <u>This Court should abstain because there would be no additional inconvenience for the parties to litigate Alpental's claims in the California Lawsuit</u>.

The parties already are involved in litigation in the California court. The California court has invited Alpental to bring its counterclaims in that litigation rather than litigating them separately in Utah. There would be little, if any, additional burden for Alpental to bring those claims in that court. Conversely, there will be significant additional burden for the parties to

---

[3] As a California based company, RCM's intellectual property is located primarily in California.

5

litigate Alpental's claims separately in this Court. RCM is located in California, all of its employees who were involved with Alpental are located there, and most of the relevant documents underlying the parties' dispute also are located there. The litigation is currently ongoing there. There is little reason to force the parties to litigate simultaneously in this forum also.

        3.  <u>This Court should abstain because exercising abstention would avoid disruptive and potentially inconsistent, piecemeal litigation.</u>

By Alpental's own admission, the California Lawsuit and the present proceeding are integrally related both factually and legally, with the activities in Utah being but one subset of the broader relationship between the parties involving the sharing and use of RCM's proprietary technology. In particular, the motivation for Alpental to enter into the MSA for projects in Utah, its use of the Utah project as a vehicle to further its takings of RCM's confidential information, and its concocted stories of RCM's inadequate performance with respect to that project go to the heart of its allegations in the present proceeding and also are a part of the broader story of Alpental's taking and misuse of RCM's technology in various states and countries. Whether Alpental acted in violation of its contractual, statutory, and contractual obligations in taking and misusing the proprietary technology will be central both to RCM's defense to the allegations that Alpental has asserted against it in the present litigation, and will be important factors in the resolution of the California Lawsuit. Thus, should this court proceed with the present litigation concurrent with the California Lawsuit, there is a probability of inconsistent, piecemeal adjudications, in addition to duplicative costs and wasted judicial resources.

Conversely, the ramifications that resolution of the claims in the California Lawsuit will have upon Alpental's claims and RCM's certain counterclaims in the present proceeding are clear. When RCM establishes in the California Lawsuit that the MSA was merely part of a

6

4847-2570-2930.2

broader scheme by Alpental to take, use, and market RCM's proprietary technology, and that Alpental's complaints of non-performance under the MSA were mere fanciful concoctions in furtherance of that scheme, the outcome of its claims in the present litigation will be effectively decided, the need for counterclaims by RCM should be moot, and the danger of conflicting rulings avoided.

4. <u>This Court should abstain because the California litigation was filed first</u>.

There is no dispute that the California court obtained jurisdiction over the California Lawsuit approximately two months before Alpental filed its lawsuit in Utah.

5. <u>This Court should abstain because the current proceeding is essentially vexatious and reactive, filed only as a ploy in Alpental's unsuccessful attempt to defeat jurisdiction of the California courts over RCM's first filed lawsuit</u>.

Alpental filed the present lawsuit, ostensibly under the MSA, only after RCM initiated litigation in California to protect its property under the Confidentiality Agreement. Alpental delayed service of the present lawsuit on RCM while using the unserved complaint as an exhibit to its motion to dismiss the California action, clearly hoping its mere existence would bolster its position. Thus, it seems clear that Alpental's filing of this lawsuit was merely an attempt to strengthen its argument in the California Lawsuit. This peculiar posturing of the present litigation weighs heavily in favor of this Court abstaining.

6. <u>This Court should abstain because this matter presents no issue of federal law</u>.

There is no dispute that neither this proceeding nor the California Lawsuit involves a question of federal law.

4847-2570-2930.2

7. <u>This Court should abstain because the California court can adequately protect Alpental's rights</u>.

The California court clearly is capable of protecting the rights of Alpental in this matter. Indeed, as discussed above, it has invited Alpental to file its claims as part of the California Lawsuit.

8. <u>This Court should abstain to deter forum shopping</u>.

As discussed above, the timing and nature of the filing of this action suggest that it was part of a litigation strategy aimed primarily at defeating the jurisdiction of the California court. This form of forum shopping should not be encouraged.

In summary, *Colorado River* abstention is appropriate in the exceptional and extraordinary circumstances of this case. *See Colorado River*, 424 U.S. at 813.[4]

## **CONCLUSION**

Alpental has argued that the factual and legal issues raised by the California Lawsuit and this lawsuit are integrally related and should be decided together. *Colorado River* and its Tenth Circuit progeny favor giving Alpental what it wants. Specifically, because (1) the present lawsuit seeks declaratory relief regarding non-federal claims; (2) RCM filed the California Lawsuit first; (3) the California court already has rejected Alpental's efforts to have the California Litigation dismissed; (4) the California court has stated that it is willing to entertain Alpental's claims; (5) Alpental invoked the jurisdiction of the Utah courts primarily to gain advantage in the California Lawsuit; (6) proceeding in two different fora raises the danger of

---

[4] While RCM would prefer that the Court dismiss the present action. It recognizes, however, that the Tenth Circuit has suggested that "the better practice is to stay the federal action pending the outcome of the state proceedings. . . . In the event the state court proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." *Fox*, 16 F.3d at 1083. We do question, however, whether this logic applies when the plaintiff before this Court clearly is free to file its claims and be fully heard in the California action.

8

4847-2570-2930.2

waste, inefficiency, and piecemeal litigation; and (7) abstention by this Court would result in little or no additional inconvenience to the parties, and for the other reasons set forth in this memorandum , it is appropriate for this Court to abstain.  RCM respectfully requests that the Court do so by entering an order either dismissing or staying any further activity in the present case pending resolution of the California Lawsuit.

DATED this 14th day of December, 2012.

    KIRTON McCONKIE

    /s/ Darryl J. Lee
    Darryl J. Lee
    KIRTON McCONKIE
    50 East South Temple
    P.O. Box 45120
    Salt Lake City, Utah 84145-0120
    Telephone: (801) 328-3600
    dlee@kmclaw.com

    Of Counsel:

    James C. Duda
    Bulkley, Richardson and Gelinas, LLP
    1500 Main Street, Suite 2700
    Springfield, MA  01115
    Tel:  (413) 781-2820/Fax:  (413) 272-6806
    jduda@bulkley.com

    *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of December, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Barry N. Johnson
> Daniel K. Brough
> BENNETT TUELLER JOHNSON & DEERE
> 3165 East Millrock Drive, Suite 500
> Salt Lake City, Utah 84121

                                      /s/ Darryl J. Lee

4847-2570-2930.2